# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# BILLINGS DIVISION

_____

| | |
|---|---|
| WILLIAM CARSON CORTRIGHT, | Cause No. CV-06-117-BLG-RFC-CSO |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO GRANT DEFENDANT MAHONEY'S MOTION FOR SUMMARY JUDGMENT |
| JASON MAHONEY, | |
| Defendant. | |

_____

Currently pending before the Court is Defendant's Motion for Summary Judgment. (Court's Doc. No. 30). Defendant provided Plaintiff with a Notice and Warning to pro se litigants pursuant to Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) on July 18, 2008 (Court's Doc. No. 32), but Plaintiff has not filed a response to Defendant's Motion.

## I.  STATEMENT OF THE CASE

### A.    Parties

Plaintiff is a pro se prisoner litigant who was granted leave to proceed in forma pauperis on March 1, 2007. (Court's Doc. No. 10).   The only Defendant is Jason Mahoney, a deputy with the Yellowstone County Sheriff's Office.

### B.     Plaintiff's Allegations

Plaintiff's Amended Complaint alleges that on February 13, 2005, at approximately 4:00 a.m., Officer Mahoney went to an assistance call concerning Plaintiff who was passed out behind the wheel of a vehicle. Plaintiff contends that he was suffering from carbon monoxide poisoning, but Officer Mahoney assumed he was intoxicated and waived the medical crew off the scene. Plaintiff stated in his Amended Complaint that he overheard Officer Mahoney say, "this prairie nigger is f***ed or f***ed up." Plaintiff admits that he became uncooperative and told Officer Mahoney, "just take me to jail that's what you want to do right." Officer Mahoney doubled cuffed Plaintiff and placed him in the back of his police cruiser. Plaintiff alleges that on the way to the Yellowstone County Detention Facility, he asked to use the restroom. He contends that Officer Mahoney responded with more racial slurs. He alleges that Officer Mahoney then pulled his vehicle off the road after Plaintiff responded to Officer Mahoney's racial slurs by "calling him on." Plaintiff states that while he was still double cuffed, Officer Mahoney pulled him out of the vehicle by his hair, pressed him against the vehicle and yelled more racial slurs at him. Plaintiff contends that when Officer Mahoney attempted to shove Plaintiff back into the car, he smashed his forehead open. (Court's Doc. No. 13, pp. 4-5).

### C.     Defendant Mahoney's Statement of Undisputed Facts

Defendant's Statement of Undisputed Facts (Court's Doc. No. 31) describes the

incident as follows:

On February 13, 2005, a Bureau of Indian Affairs (BIA) officer, Donald Stewart, called for assistance with a male subject, Plaintiff William Carson Cortright, who was found unresponsive in a vehicle on Blue Creek Road and Helfrick Road in Yellowstone County. (Court's Doc. No. 31-2:  Mahoney Affidavit, ¶¶ 2-3).  Yellowstone County Sheriff's Deputies Jason Mahoney and Chris Romero responded to the scene in separate vehicles. (Court's Doc. No. 31-2:  Mahoney Affidavit, ¶ 2; Court's Doc. No. 31-3: Romero Affidavit, ¶ 2).  When Officers Mahoney and Romero arrived at the location, BIA Officer Stewart and American Medical Response (AMR) personnel were on the scene and were unable to arouse Plaintiff.  (Court's Doc. No. 31-2:  Mahoney Affidavit, ¶¶ 5-6).  Officer Mahoney administered a sternal rub which made Plaintiff respond. (Court's Doc. No. 31-2:  Mahoney Affidavit, ¶ 6).  Plaintiff admitted to Officer Mahoney that he had been drinking and Officer Mahoney placed him under arrest for Driving Under the Influence. (Court's Doc. No. 31-2:  Mahoney Affidavit, ¶ 7).  Officer Mahoney placed Plaintiff in handcuffs using two sets of handcuffs linked together due to Plaintiff's size. (Court's Doc. No. 31-2:  Mahoney Affidavit, ¶ 8).

Prior to leaving the scene, Plaintiff requested to urinate and Officer Mahoney walked Plaintiff around to the front of his vehicle to do so.  Officer Mahoney then assisted Plaintiff into the back of his patrol vehicle. (Court's Doc. No. 31-2:  Mahoney Affidavit, ¶¶ 9-10).  Officers Mahoney and Romero both testified by affidavit that

Plaintiff was cooperative and did not resist entry into the vehicle. (Court's Doc. No. 31-2: Mahoney Affidavit, ¶ 10: Court's Doc. No. 31-3: Romero Affidavit, ¶ 5). Officer Mahoney then transported Plaintiff to the Yellowstone County Detention Facility with Officer Romero following in his patrol car. (Court's Doc. No. 31-2: Mahoney Affidavit, ¶ 11: Court's Doc. No. 31-3: Romero Affidavit, ¶ 6). At some point during the transport, Plaintiff became agitated because Officer Mahoney would not pull over so he could urinate again. (Court's Doc. No. 31-2: Mahoney Affidavit, ¶ 12). Plaintiff started kicking and swearing and yelling at Officer Mahoney saying that he was going to sue Officer Mahoney and that Officer Mahoney was out to get him because he was Native American. (Court's Doc. No. 31-2: Mahoney Affidavit, ¶ 12). Officer Mahoney did not respond to Plaintiff. (Court's Doc. No. 31-2: Mahoney Affidavit, ¶ 12).

Plaintiff stated that he wanted Officer Mahoney to take the handcuffs off of him so he could "kick (Officer Mahoney's) ass." (Court's Doc. No. 31-2: Mahoney Affidavit, ¶ 13). When Officer Mahoney did not respond, Plaintiff slammed his head twice into the cage between the front and back of Officer Mahoney's patrol car. (Court's Doc. No. 31-2: Mahoney Affidavit, ¶ 13). Officer Mahoney called dispatch to advise Yellowstone County Detention Facility personnel to have extra detention officers on hand to manage Plaintiff upon their arrival, as Plaintiff had become violent and upset. (Court's Doc. No. 31-2: Mahoney Affidavit, ¶ 14: Court's Doc. No. 31-3: Romero Affidavit, ¶ 8). Plaintiff then informed Officer Mahoney that he was bleeding and could feel blood running down

his face. (Court's Doc. No. 31-2: Mahoney Affidavit, ¶ 15). Plaintiff calmed down by the time they arrived at detention facility and was cooperative with the detention officers. (Court's Doc. No. 31-2: Mahoney Affidavit, ¶ 16). Officer Mahoney observed a small laceration on Plaintiff's forehead. (Court's Doc. No. 31-2: Mahoney Affidavit, ¶ 16). Officer Mahoney had no further interaction with Plaintiff after arriving at the detention facility. (Court's Doc. No. 31-2: Mahoney Affidavit, ¶ 17).

Officer Mahoney did not stop his vehicle at any point while transporting Plaintiff to the detention facility. (Court's Doc. No. 31-2: Mahoney Affidavit, ¶ 18: Court's Doc. No. 31-3: Romero Affidavit, ¶ 9). Officer Mahoney testified that he did not assault or attack Plaintiff in any manner and did not need to employ the use of force against Plaintiff at any point in dealing with him, other than providing minor assistance in getting him into the vehicle as Plaintiff is a large individual who was intoxicated and unstable on his feet. (Court's Doc. No. 31-2: Mahoney Affidavit, ¶ 19: Court's Doc. No. 31-3: Romero Affidavit, ¶ 11).

## II.  ANALYSIS

### A.  Standard

A party is entitled to summary judgment if that party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one

conclusion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248.  The non-moving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions.  Id.  Only disputes over facts that might affect the outcome of the suit under the governing law are "material" and will properly preclude entry of summary judgment.  Anderson, 477 U.S. at 248.

At the summary judgment stage, the judge's function is not to weigh the evidence or determine the truth of the matter, but to determine whether there is a genuine issue for trial.  However, if the evidence is merely colorable or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249-50.

> The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on

which the jury could reasonably find for the [non-moving party].  The
judge's inquiry, therefore, unavoidably asks whether reasonable jurors
could find by a preponderance of the evidence that the plaintiff is entitled
to a verdict.

Anderson, 477 U.S. at 252.

In civil rights cases and in the context of a motion for summary judgment where a litigant is proceeding pro se, the court has an obligation to construe pro se documents liberally and to afford the pro se litigant the benefit of any doubt.  Erickson v. Pardus, 127 S.Ct 2197, 2200 (2007) (per curiam); Baker v. McNeil Island Corrections Ctr., 859 F.2d 124, 127 (9th Cir. 1988).

Plaintiff did not respond to Defendant's Motion for Summary Judgment.  Local Rule 7.1(i) provides that a failure to file a brief by the opposing party shall be deemed an admission that the motion is well taken.  However, the Ninth Circuit has held that, "[a] district court may not grant a motion for summary judgment simply because the nonmoving party does not file opposing material, even if the failure to oppose violates a local rule.  However, when the local rule does not require, but merely permits the court to grant a motion for summary judgment, the district court has discretion to determine whether noncompliance should be deemed consent to the motion." Brydges v. Lewis, 18 F.3d 651, 652 (9th Cir. 1994)(per curiam)(internal citations omitted).   Thus, the Court will not deem Plaintiff's failure to respond as consent to the motion and will review the merits to determine whether summary judgment is appropriate.

**B.     Merits**

A Fourth Amendment claim of excessive force is analyzed under the framework set forth by the Supreme Court in Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).  A court must balance the "nature and quality of the intrusion" on a person's liberty with the "countervailing governmental interests at stake" to determine whether the use of force was objectively reasonable under the circumstances. Id. at 396, 109 S.Ct. 1865.  To evaluate the "nature and quality of the intrusion," this court "assess[es] the quantum of force used [ ] by considering 'the type and amount of force inflicted.' " Deorle v. Rutherford, 272 F.3d 1272, 1279 (9th Cir. 2001) (quoting Headwaters Forest Def. v. County of Humboldt, 240 F.3d 1185, 1198 (9th Cir. 2000)). This determination "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052, 1058 (9th Cir. 2003) (quoting Graham, 490 U.S. at 396, 109 S.Ct. 1865).

Defendant Mahoney has presented the undisputed testimony of both himself and another officer on the scene that no force was utilized in the arrest and transport of Plaintiff.  Moreover, Plaintiff failed to respond to Defendant's request for admissions which results in the admissions being deemed admitted.  Fed. R. Civ. P. 36(b).  By failing to respond to these discovery requests, Plaintiff has admitted that his transport to the Yellowstone County Detention Facility lasted no more than ten minutes, and that

Defendant Mahoney did not stop his vehicle during the transport. (Court's Doc. No. 31-4, Requests for Admission Nos. 20, 23).

As set forth above, a party opposing a motion for summary judgment, "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248. Plaintiff's Amended Complaint presents quite a different version of events than that described by Officers Mahoney and Romero, but without a response to Defendant's motion from Plaintiff, the Court must accept the facts as presented in Defendant's Motion for Summary Judgment. Under those facts, Summary Judgment is proper.

Accordingly, the Court issues the following:

## RECOMMENDATION

Defendant Mahoney's Motion for Summary Judgment (Court's Doc. No. 30) should be **GRANTED**, Plaintiff's Complaint should be **DISMISSED**, and Judgment should be entered in favor of Defendants.

The Clerk of Court is directed to serve a copy of this Findings and Recommendation upon Plaintiff at the Montana State Prison as well as his last known address as indicated on the docket.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge.

**PLAINTIFF IS CAUTIONED THAT HE MUST KEEP THE COURT ADVISED OF ANY CHANGE OF ADDRESS AND A FAILURE TO DO SO COULD RESULT IN A RECOMMENDATION OF DISMISSAL OF THIS CAUSE OF ACTION.**

DATED this 28th day of August, 2008.

                                              /s/ Carolyn S. Ostby
                                              Carolyn S. Ostby
                                              United States Magistrate Judge